UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL DUTTON,

                                    Plaintiff,

                -vs-                                          07-CV-0410C

PENSKE LOGISTICS,

                                    Defendant.
_____

APPEARANCES:    SANDERS & SANDERS (HARVEY SANDERS, ESQ.),
                Cheektowaga, New York, for Plaintiff.

                SCHRODER, JOSEPH & ASSOCIATES, LLP (LINDA H. JOSEPH,
                ESQ.), Buffalo, New York, for Defendant.


## INTRODUCTION

       This is an action for sex discrimination in employment brought under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the New York State

Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL").   Plaintiff alleges that she was

subjected to a hostile work environment and then terminated from her employment in a

discriminatory fashion and in retaliation for protected activity.   Defendant filed a motion to

dismiss the federal causes of action and the court, in a decision and order filed July 24,

2008, dismissed plaintiff's hostile work environment claim as time-barred (Item 8).   On

January 6, 2010, defendant filed a motion for summary judgment dismissing the complaint

(Item 22).   Plaintiff filed a response to the motion on March 15, 2010 (Item 27), and

defendant filed a reply on April 6, 2010 (Item 33).   The court determined that oral argument

was unnecessary. For the reasons that follow, the defendants' motion is granted, and the complaint is dismissed.

## FACTS[1]

Plaintiff commenced her employment with AMI Leasing Fleet Management ("AMI") in June 2004. She worked as an operations manager, providing on-site staffing for truck shipments for AMI's customer, CertainTeed. In August 2004, AMI became part of Penske, and plaintiff continued to work at the CertainTeed facility. Her duties included the coordination of truck shipments for CertainTeed and supervision of drivers (Item 22, Att. 12, ¶¶ 1-2; Kranack Aff., ¶ 3).

Plaintiff complained of disparaging comments made to and about her by co-workers and truck drivers. She complained that drivers were not following her policies and that her supervisor moved costs from his facility to hers so as to make her appear unproductive. She also complained that her supervisor yelled at her inappropriately during conference calls (Item 26, ¶¶ 6-8, 13). On May 31, 2005, plaintiff submitted a letter of resignation, but was convinced to stay on the job by Dick St. Gelais, a Penske executive, who did not want to lose such a valued employee. *Id.* ¶ 17.

In approximately late May 2005, plaintiff was physically assaulted by her boyfriend (Dutton Dep. 1, pp. 197-98). At the time, she had been on the telephone with a co-worker, Chris Walsh. *Id.,* pp. 198-99. Following the assault, she telephoned Walsh and met with

---

[1] The factual statement is taken from defendant's statement of undisputed material facts (Item 22, Att.12), the appendix of exhibits to the statement, including the transcript of plaintiff's deposition testimony of March 2, 2009 (Item 22, Att. 13-15, Exh. B, hereafter "Dutton Dep. 1") and July 7, 2009 (Item 22, Att. 17, Exh. I, hereafter "Dutton Dep. 2"), the deposition of Christopher Walsh (Item 22, Att. 16, Exh..G, hereafter "Walsh Dep."), and the affidavit of Jason Kranack (Item 22, Att. 17, Exh.. J, hereafter "Kranack Aff."), and plaintiff's affidavit in opposition to the motion (Item 26).

him in the parking lot of a donut shop (Dutton Dep. 1, pp. 205-08). Plaintiff decided to move out of her boyfriend's apartment and accepted an offer of help from Walsh and another co-worker, Dave McCarley. The two men came to plaintiff's apartment and helped her pack her things. *Id.,* p. 214.

At her deposition, plaintiff testified that she "had an issue" with Walsh (Dutton Dep. 1, p. 216). She felt he was interested in her romantically, yet she had a policy against dating co-workers (Dutton Dep. 1, pp. 216-17). Some people at work told plaintiff that Walsh was "obsessed" with her, and that he was "loony," "psychotic," and had a bad temper. *Id.,* pp. 221-24, 228. Plaintiff also testified that she saw Walsh drive past her house when he was supposed to be in Pennsylvania. *Id.,* pp. 229-30. Plaintiff thought Walsh was "stalking" her. *Id.,* p. 278. Plaintiff could not recall when these incidents occurred. *Id.,* pp. 246-47. She also testified that she reported Walsh's behavior to Jason Kranack, the Director of Staffing, but could not recall the date of the conversation. *Id.,* p. 247.

In his deposition, Walsh stated that he helped plaintiff pack her things on June 8 and 9, 2005 (Walsh Dep., p. 25). He offered to borrow his son's pick-up truck to help her move and arranged to meet plaintiff on June 10, 2005 at approximately 6:00 pm. *Id.*

On June 10, 2005 at approximately 3:00 pm, plaintiff was in the parking lot of the CertainTeed facility in her car smoking a cigarette (Dutton Dep. 1, p. 264). Walsh arrived at the plant in his son's pick-up truck. Plaintiff asked him what he was doing at the plant as he was on vacation. Walsh stated that he was in the area. Plaintiff told Walsh that if he didn't have business at the plant he should leave the property. She then went inside

the building and into the ladies' room. *Id.,* pp. 265, 269. Plaintiff stated that she heard Walsh speaking with someone in the shipping office, but most of the employees were in a meeting. *Id.* Plaintiff then heard "pounding" on the bathroom door. *Id.,* p. 273. She attempted to lock the door, but noticed the handle of the door turning as if Mr. Walsh was going to enter the bathroom. *Id.,* p.274. Plaintiff struggled to keep the door closed, but then opened the door, punched Walsh in the chest repeatedly and kicked him. *Id.,* pp. 274-75.

In her affidavit, plaintiff stated that she entered the ladies' restroom in an attempt to hide from Walsh, that he followed her into the building, and that Walsh was banging on the door and tried to force his way in. Plaintiff stated that she fought him off first by pulling the door handle, and then by hitting and kicking him. She escaped from the bathroom "to avoid further hostile action" by Walsh (Item 26, ¶ 19).

Walsh stated that plaintiff became angry when she saw him at the plant (Walsh Dep., p. 29). He followed her inside, and heard her blowing her nose in the bathroom. *Id.,* p. 34. Walsh stated that he knocked on the door and asked plaintiff why she was so upset. She came out of the bathroom screaming at him. Walsh did not remember if he was hit. He stated that he was shocked at plaintiff's behavior and left the building. *Id.,* p. 35.

On June 15, 2005, Jason Kranack, Director of Staffing, and Colleen Shearn, Human Resources Recruiter, conducted an investigation of the June 10 incident. They interviewed both plaintiff and Walsh and reviewed an incident report prepared by plaintiff's supervisor, David Hess (Kranack Aff., ¶ 4). The notes of their investigation indicate that Walsh assisted plaintiff with her packing on June 9, 2005 and then was going to meet her at 6:30

p.m. on June 10, 2005 with his son's truck to help her move (Kranack Aff. Exh. A). Kranack and Shearn contacted Tracy Schrey, Employment Counsel for Penske. Those three individuals decided that Walsh should be suspended without pay and plaintiff's employment should be terminated (Kranack Aff. ¶ 9). They based their decision on the fact that plaintiff was a management employee who had used unreasonable physical force against a subordinate. While Walsh was not without fault, his culpability was less than plaintiff's and warranted a lesser sanction (Kranack Aff. ¶ 10). Plaintiff's employment was terminated effective June 21, 2005 (Kranack Aff. Exh. B).

Following her termination, plaintiff spoke on the telephone and met several times with Walsh, often at a truck stop in Cheektowaga. On one occasion, Walsh gave plaintiff a CB radio. On other occasions, they discussed a book she was writing about the trucking industry (Dutton Dep. 2, pp 355-60).

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*,
477 U.S. at 255.

"Only when reasonable minds could not differ as to the import of the evidence is
summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).
Summary judgment cannot be entered " 'if there is any evidence in the record from any
source from which a reasonable inference could be drawn in favor of the nonmoving party."
*Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 508 (S.D.N.Y.
2003). The trial court's function at the summary judgment stage "is carefully limited to
discerning whether there are any genuine issues of material fact to be tried, not to deciding
them. Its duty, in short, is confined at this point to issue-finding; it does not extend to
issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224
(2d Cir. 1994); *see also Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549
(W.D.N.Y. 2005).

## 2. Disparate Treatment

Under Title VII, it is unlawful for an employer to "discriminate against any individual
with respect to his compensation, terms, conditions, or privileges of employment, because
of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1);
*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003). Likewise, New York's Human
Rights Law prohibits discrimination "in compensation or in terms, conditions or privileges
of employment" against individuals within the statute's protected classifications. N.Y. Exec.
Law § 296(a). The same analysis is applied to consideration of parallel federal and state

race claims. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565, n.1 (2d Cir. 2000) (applying same analysis to race discrimination claims brought under Title VII and NYSHRL).

Where, as here, there is no direct or overt evidence of discriminatory conduct, courts apply the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), to determine if summary judgment is appropriate. *McDonnell Douglas* first requires that the plaintiff establish a *prima facie* case of discrimination. In order to do this, the plaintiff must demonstrate, by admissible evidence, that (1) she is a member of a protected class, (2) she is qualified for the position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. *Lawrence v. Nyack Emergency Physicians, P.C.*, 659 F. Supp. 2d 584, 593 (S.D.N.Y. 2009) (citing cases). "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir. 2000) (characterizing burden as "minimal"). Where a plaintiff is unable to satisfy this minimal showing, summary judgment is warranted.

If the plaintiff sustains this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Burdine,* 450 U.S. 248 at 254. If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)).

Assuming the defendant meets its burden at the second stage, the burden returns to the plaintiff to establish that the defendant's stated justification for the adverse employment action is, in fact, a pretext and that the plaintiff's gender was a motivating factor in the employer's decision-making process. *Lawrence,* 659 F. Supp. 2d at 593-94. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock,* 224 F.3d at 42. But "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *Id.* (quoting *St. Mary's*, 509 U.S. at 519).

Plaintiff argues that she has set forth a *prima facie* case of gender discrimination because she was a "known victim of sexual harassment" who was terminated for "merely defending herself against a physical attack" by a co-worker (Item 25, p. 1). In her complaint, plaintiff set forth several instances of disparaging comments made by co-workers, some to her and others about her, and conduct by her supervisor which she characterized as gender-based harassment. Her hostile work environment claim was dismissed as untimely (Item 8). However, plaintiff seeks to rely on these allegations to show that the decision to terminate her employment gives rise to an inference of discrimination. Additionally, she argues that the decision to merely suspend Walsh without pay is further evidence of gender discrimination.

Assuming that the allegations of harassment give rise to an inference of discrimination and that plaintiff has stated a *prima facie* case of discrimination, defendant has proffered a non-discriminatory reason for plaintiff's termination. Jason Kranack, Penske's Director of Staffing at the time of the incident, stated that the decision was made to terminate plaintiff based on her behavior. While Walsh could not recall if plaintiff

actually made contact with him, plaintiff repeatedly admitted that she punched Walsh several times and kicked him after he appeared at the CertainTeed facility when not scheduled for work (Dutton Dep. 1, pp. 274-75).  Walsh had previously assisted plaintiff in preparing for a move, and the two had a cordial relationship which continued after the incident of June 10, 2005.  Kranack stated that the decision to terminate plaintiff's employment while only suspending Walsh was based on the differing positions of the two employees–plaintiff was Walsh's supervisor–and while both parties were at fault, plaintiff's conduct was more egregious.  Affording plaintiff the benefit of all favorable inferences, and even accepting her version of the events that she was fearful of Walsh and believed he was stalking her, plaintiff's behavior was nonetheless unwarranted and unprofessional. The record does not support plaintiff's argument that she was merely defending herself against a violent attack.  She has failed to establish a genuine issue of material fact to suggest that she was terminated based on her gender.  Accordingly, the motion for summary judgment is granted, and plaintiff's Title VII and NYSHRL disparate treatment claims are dismissed.

### 3.  Retaliation

Retaliation claims under Title VII are also examined under the same *McDonnell Douglas* burden-shifting framework utilized for disparate treatment claims.  *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).  Retaliation claims under the NYSHRL, like discrimination claims, are also governed by the same standards as federal claims under Title VII.  *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

A plaintiff makes a *prima facie* showing of retaliation by establishing that (1) she participated in a protected activity known to the defendant, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* discrimination case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. at 99-101.

Once a plaintiff has satisfied her *prima facie* burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for its action. *See Feingold v. New York,* 366 F.3d 138, 157 (2d Cir. 2004). If the defendant offers such a justification, the burden then shifts back to plaintiff to demonstrate that the reasons proffered by defendant were a pretext for retaliatory animus based upon protected Title VII activity. *See Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

Plaintiff argues that she complained about harassment to her supervisor, Dave Hess, and that he failed to take action. Making a complaint regarding harassment to one's supervisor is "protected activity" under Title VII. *Cruz v. Coach Stores, Inc.,* 202 F.3d at 566. She also states Kranack was aware of the harassment. Accordingly, plaintiff has established that she participated in protected activity and that she suffered an adverse employment action. Even if the court were to assume that plaintiff's previous complaints of harassment established a causal connection between the protected activity and her termination, defendant has proffered a legitimate, non-retaliatory reason for plaintiff's

termination. In response, plaintiff has offered no admissible proof to suggest that this rationale was pretextual. She admitted that she punched and kicked Walsh when he appeared at the work site while on vacation. She was then terminated for her actions toward a subordinate while Walsh was suspended without pay. As stated above, even affording plaintiff the benefit of every reasonable inference, her actions on June 10, 2005 were unprofessional and inconsistent with her argument on this motion that she was merely defending herself.

Plaintiff argues that Hess was both the perpetrator of gender-based harassment and one of the decision-makers who terminated her employment, and thus her retaliation claim is viable. To the contrary, the record reflects that the decision to terminate plaintiff's employment was made by Kranack and Shearn, with input from Schrey, following their investigation of the incident of June 10, 2005 (Kranack Aff., ¶ 10). The involvement of Hess was merely ministerial, as he was plaintiff's immediate supervisor and generated the "Supervisor's Termination Checklist" (Kranack Aff. Exh. B). Additionally, it is undisputed that only days before the June 10, 2005 incident, plaintiff had tendered a letter of resignation but was persuaded to remain with the company by Dick St. Gelais, a Penske Vice President. Under these circumstances, the court would be hard-pressed to conclude that defendant harbored a discriminatory or retaliatory intent to terminate plaintiff's employment. Accordingly, plaintiff has failed to establish a genuine issue of material fact to suggest that defendant's reason for her termination was pretextual and that the real reason for her termination was retaliation for her previous complaints of harassment. The motion for summary judgment is granted, and plaintiff's Title VII and NYSHRL retaliation claims are dismissed.

**4. State Law Claims**

Having determined that plaintiff's federal claims do not survive defendant's motion for summary judgment, the court concludes that retaining jurisdiction over any remaining state law claims is unwarranted. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)), *aff'd,* 551 F.3d 122 (2d Cir. 2008).

Therefore, in the instant case, the court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's remaining state law claims, to the extent that any survive, because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, 2002 WL 1561126, *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law,

it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

## CONCLUSION

Defendant's motion for summary judgment is granted, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

_____\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 12      , 2010
p:\pending\2007\07-410may2010